Reversed and Remanded and Opinion filed February 12, 2004














Reversed and
Remanded and Opinion filed February 12, 2004.

 

 

In The

 

Fourteenth
Court of Appeals

____________

 

NO. 14-03-00528-CV

____________

 

KOLL REAL ESTATE GROUP,
INC., Appellant

 

V.

 

ALTON P. HOWARD, ET AL., Appellees

 

__________________________________________________

 

On Appeal from the 10th District Court

Galveston County, Texas

Trial Court Cause No. 02CV0422

 

__________________________________________________

 

O P I N I O N

            In
this accelerated appeal, Koll Real Estate Group, Inc.
(“Koll”), challenges the trial court’s denial of its
special appearance.  We reverse and
remand.








I.  Background

            In
the underlying action, thirteen plaintiffs[1] filed suit
against Koll and numerous other defendants, alleging
asbestos related injuries.  In their
pleadings, plaintiffs sued Koll as “successor in
interest to M.W. [K]ellogg Company and Pullman,
Inc.”  Koll
filed a special appearance in the trial court asserting it lacked sufficient
contacts with Texas and it was
not the corporate successor to M.W. Kellogg Company (“Kellogg”).  Plaintiffs responded, arguing that Koll had sufficient contacts because “its constituent
predecessor corporations, M.W. Kellogg and Pullman, Inc. had contacts with Texas that are
imputed to Koll.” 


            There
was no oral hearing conducted on Koll’s special
appearance; the trial court decided the matter based on the special appearance,
plaintiffs’ response, and the evidence on file. 
The trial court signed an order overruling Koll’s
special appearance on April 10,
 2003.  Koll
requested findings of fact and conclusions of law, but none were issued.  This appeal ensued.

            On
appeal, Koll argues the trial court erred in denying
its special appearance because it is not the successor to Kellogg, it did not
assume Kellogg’s liabilities, and it lacks any relationship to Texas which
would make an exercise of personal jurisdiction proper. 

A.  Corporate
Entities Involved  

            The
record indicates that Pullman began its
corporate existence in 1927.  In late
1980, Wheelabrator Chicago, Inc. (“Wheelabrator”) merged with Pullman, and the
new corporate entity became Pullman, Inc. 
Wheelabrator-Frye, Inc. (“WFI”) acquired all
the stock of Pullman.  Thereafter, Pullman was a
wholly owned subsidiary of WFI.  At that
time, M.W. Kellogg Division, an engineering and construction firm, was an
unincorporated division of Pullman.  In January 1981, WFI caused Pullman, Inc. to
be renamed Kellogg.  At the same time, it
spun off Pullman’s
transportation businesses into separate companies, but retained the M.W.
Kellogg engineering business in the renamed entity. 

            In
1983, WFI became a wholly owned subsidiary of The Signal Companies, Inc.
(“Signal”).  In 1985, Signal merged with
Allied Corporation and became a wholly owned subsidiary of Allied-Signal, Inc.
(“Allied-Signal”).  In 1986,
Allied-Signal spun off thirty-nine of its businesses into a new corporation
called The Henley Group, Inc. (“Henley I”). 
Among the companies which Allied-Signal contributed to Henley I was
Kellogg.  

            By
Purchase Agreement dated January 11, 1988, Henley I (at the time of the
agreement, The Henley Group, Inc.), Kellogg, and Kellogg Newco
One, Inc., sold Kellogg’s various assets to Dresser Industries; specifically,
those assets relating to “Open Contracts or Jobs.”  In the agreement, Dresser also assumed all
liabilities in connection with “Open Contracts or Jobs;” other “excluded
liabilities” were not assumed by Dresser, specifically those related to “Closed
Contracts or Jobs.”  Further, the
agreement contained an exchange of indemnities whereby Henley I, Kellogg, and Newco One indemnified Dresser against any loss or liability
arising from, among other things, a “Closed Contract or Job,” and Dresser
indemnified those same parties from any loss or claims regarding any “Open
Contract or Job.”

            In
December 1988, Henley I entered into a Transition Agreement with Henley Newco, Inc. in which it completed a reverse spinoff, placing certain assets and businesses into a
subsidiary.[2]  At that time, Henley I changed its name to
the Wheelbrator Group, Inc. (“WGI”) and the spinoff corporation was renamed The Henley Group, Inc.
(“Henley II”).  Specifically, relative to
this appeal, Henley II acquired Henley I’s assets and
obligations regarding the “M.W. Kellogg Company Disposition.”  In addition, the Transition Agreement
contains an exchange of indemnities, whereby each company agreed to indemnify
the other against losses arising out of or due to the failure of either party
to perform their obligations arising under the Transition agreement.  The indemnifications occur only under certain
circumstances and pursuant to procedures contained within the agreement.   

            Under
the Transition Agreement, Henley I retained several businesses, including Resco Holdings, Inc., Wheelabrator
Technologies, Inc., The Henley Group, Inc., and KELL Holding Corporation.  All stock of Kellogg, then a corporate shell
with no assets or operations, went to WGI. 
Kellogg has remained a wholly owned subsidiary of WGI.[3]

            Also,
in December 1988, Henley I, Henley II, and Dresser entered into an Assignment,
Assumption and Release Agreement whereby Henley II agreed to assume Henley I’s obligations under the Dresser Purchase Agreement.

B.  Koll Real Estate Group, Inc. 

            Koll’s successor was Henley II.  In 1989, Henley II’s
name was changed to Henley Properties, Inc., and then to Bolsa
Chica Company in 1992.  In 1993, the corporate entity became the Koll Real Estate Group.[4]

II.  Arguments and Authorities  

            In
three issues, Koll argues the trial court erred in
overruling its special appearance because: (1) Koll
is not the corporate successor of Kellogg; (2) Koll
did not agree to assume the liabilities of Kellogg; and (3) Koll’s
“only relationship with Texas is that its predecessor was the assignee of the
assignor’s liability as indemnitor in connection with
the sale of certain assets and businesses by the assignor’s subsidiary, Kellogg,
to the purchaser, Dresser.”  Appellees contend that jurisdiction is proper because Koll’s corporate predecessor assumed liability for the acts
of Kellogg and Pullman.[5]  




A.  Standard of
Review

            The
plaintiff has the initial burden of pleading sufficient allegations to bring
the nonresident defendant within the provisions of the Texas long-arm
statute.  BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d
789, 793 (Tex. 2002); Walker Ins. Servs.
v. Bottle Rock Power Corp., 108 S.W.3d 538, 548 (Tex. App.—Houston [14th
Dist.] 2003, no pet.).  At the special
appearance hearing, the burden shifts to the nonresident defendant to negate
the bases of personal jurisdiction asserted by the plaintiff.  Am.
Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 807 (Tex. 2002); Bottle Rock, 108 S.W.3d at 548.  On appeal, an appellate court reviews all
evidence in the record to determine if the nonresident defendant negated the
grounds for personal jurisdiction.  Bottle Rock, 108 S.W.3d at 548.  

            Whether
a court has personal jurisdiction over a defendant is a question of law.  Coleman, 83 S.W.3d at 805–06; Marchand, 83
S.W.3d.at 794.  However, in resolving
this question of law, a trial court must frequently resolve questions of fact.  Coleman, 83 S.W.3d at 806.  On appeal, a trial court’s determination to
deny a special appearance is subject to de
novo review, but appellate courts may
be called upon to review the trial court’s resolution of a factual
dispute.  Id.  When the trial court does not issue findings
of fact, as in this case, reviewing courts should presume the trial court
resolved all factual disputes in favor of its judgment.  Id. 

            Here,
Koll contends there are no disputed facts because the
only issue is whether Koll assumed the liabilities of
its predecessors, which, according to Koll, is a
question of law based upon the interpretation of contracts.  On review, for legal sufficiency points, if
there is more than a scintilla of evidence to support the finding, the legal
sufficiency challenge fails.  Marchand, 83
S.W.3d at 795.  

B. Personal Jurisdiction

            Texas courts may
exercise jurisdiction over a nonresident defendant if two conditions are
satisfied: (1) the Texas long-arm
statute authorizes the exercise of personal jurisdiction; and (2) the exercise
of jurisdiction is consistent with federal and state constitutional guarantees
of due process.  Bottle Rock, 108 S.W.3d at 546 (citing Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex.
1990)).  The Texas long-arm
statute authorizes the exercise of jurisdiction over a nonresident defendant
who does business in Texas.  See Tex. Civ. Prac. & Rem. Code § 17.042; CSR Ltd.
v. Link, 925 S.W.2d 591, 594 (Tex.
1996).  The Texas Supreme Court has
interpreted the broad language of the Texas long-arm
statute to extend Texas courts’
personal jurisdiction “as far as the federal constitutional requirements of due
process will permit.”  Marchand, 83
S.W.3d at 795.  As a result, we consider
only whether it is consistent with federal constitutional requirements of due
process for Texas courts to
assert in personam
jurisdiction over Koll.  Guardian
Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223,
226 (Tex. 1991); Bottle Rock, 108 S.W.3d at 546–47.

            Under
federal constitutional requirements of due process, personal jurisdiction over
nonresident defendants is constitutional when two conditions are met: (1) the
defendant has established minimum contacts with the forum state; and (2) the
exercise of jurisdiction comports with traditional notions of fair play and
substantial justice.  Marchand, 83 S.W.3d at 795; Bottle Rock, 108 S.W.3d at 547.

            The
minimum contacts analysis focuses on the relationship among the defendant, the
forum, and the litigation.  See Guardian
Royal, 815 S.W.2d at 228.  We must
determine whether the nonresident defendant has “‘purposefully avail[ed] itself
of the privilege of conducting activities within the forum State,’” invoking
the benefits and protections of the state’s laws.  Bottle
Rock, 108 S.W.3d at 547 (quoting Hanson v. Denckla,
357 U.S. 235, 253
(1958)).  A nonresident defendant that
purposefully avails itself of the privileges and benefits of conducting
business in the forum state has sufficient contacts with the forum to confer
personal jurisdiction on the court.  Id.  The purposeful availment
requirement ensures the nonresident defendant’s contacts derive from its own
purposeful activity and not the unilateral activity of the plaintiff or a third party. 
Id.  A defendant is not subject to jurisdiction in
a Texas court if
its Texas contacts
are random, fortuitous, or attenuated. Coleman,
83 S.W.3d at 806. 

            An
exercise of jurisdiction must also comport with traditional notions of fair
play and substantial justice.  Id.  In this inquiry, it is incumbent upon the
defendant to present “a compelling case that the presence of some other
considerations would render jurisdiction unreasonable.”  Burger
King Corp. v. Rudzewicz, 471 U.S. 462, 477
(1985).          

III.  Analysis

            In
the trial court, Koll argued that an assertion of
jurisdiction was improper because it was not, as appellees
had alleged, the corporate successor to Kellogg.  Koll further argued
it was a Delaware
corporation with no independent Texas contacts
and it had not committed a tort against plaintiffs in Texas.  In support of its special appearance, Koll furnished an affidavit stating it was a Delaware company
which had never done business in Texas, various
documents tracing the corporate history of The Henley Group and Wheelabrator Technologies, and documents evidencing the various
name changes of the Henley II entity.  Koll also provided a copy of the Transition Agreement.  

            In
response to Koll’s special appearance, the appellees argued that Koll
expressly assumed the liabilities of Kellogg through the Transition Agreement
and an Assignment, Assumption and Release Agreement.  Appellees provided
various certificates of incorporation, merger and amendments tracing the
corporate existence of Pullman and
Kellogg.  They also provided deposition
testimony and earnings records for plaintiffs unrelated to this suit, answers
to interrogatories from another suit involving Resco
Holdings, Inc., a copy of the Transition Agreement, the Purchase Agreement, and
the Assignment, Assumption and Release Agreement.  

            Appellees alleged that the express language of the
Transition Agreement, listing the “M.W. Kellogg Disposition” as a Henley II (Koll’s predecessor) asset, indicates that Henley II agreed
to assume the obligations of Henley I under the Dresser agreement.  Subsequently, by virtue of the Assignment,
the parties acknowledged Henley II was assuming those obligations and Dresser
agreed to look to Henley II under the Purchase Agreement.  Based on these documents, appellees
argued in their response that Koll “stands in the
shoes of M.W. Kellogg” and remains liable for their torts.  Further, appellees
argued that “a corporation that stands in the shoes of a constituent
predecessor for liability purposes does so for jurisdictional purposes as
well.”  Thus, appellees
jurisdictional argument rests on the idea that, by assuming the liabilities of
Kellogg, the contacts of Kellogg may be imputed to Koll.[6] 

            Under
Texas law, two
separate corporations are considered distinct entities.  Marchand, 83 S.W.3d at 798. 
Therefore, for jurisdictional purposes, a party seeking to ascribe one
corporation’s actions to another, by disregarding their distinct corporate
entities, must prove this allegation.  Id. (examining
assertion of jurisdiction based on allegation of alter ego).  To “fuse” a parent company and its subsidiary
for jurisdictional purposes, plaintiffs must prove the parent controls the
internal business operations and affairs of the subsidiary.  Id. at 799; see Seminole Pipeline Co. v. Broad Leaf
Partners, Inc., 979 S.W.2d 730, 739 (Tex. App.—Houston [14th Dist.] 1998,
no pet.).  Here, because appellees assert jurisdiction on the basis of the contacts
of Koll’s corporate predecessors, they bear the
burden of proving those allegations.  See Marchand,
83 S.W.3d at 798; Baldwin v. Household Int’l, Inc., 36 S.W.3d
273, 278 (Tex. App.—Houston [14th
Dist.] 2001, no pet.) (finding plaintiff bears the burden of proving a
subsidiary’s contacts with a jurisdiction to establish jurisdiction over the
parent corporation); 3-D Elec. Co. v.
Barnett Constr. Co., 706 S.W.2d 135, 139 (Tex.
App.—Dallas 1986, writ ref’d n.r.e.).[7]  There is no dispute between the parties that Koll is not liable for appellees’
injuries by virtue of its own Texas
contacts.  The only issue before us is
whether Koll’s corporate predecessors voluntarily
assumed liability for the obligations of Kellogg, such that Kellogg’s contacts
may be imputed to Koll and the Texas court may
properly assert personal jurisdiction over it.[8]

A.  Koll Real Estate Group, Inc. v. Purseley

            We
begin our discussion by acknowledging a recent opinion issued by our sister
court, the First Court of Appeals.  In Koll Real Estate Group, Inc. v. Purseley, under the same factual circumstances at issue
here, but involving a different set of plaintiffs, the First Court of Appeals examined
whether “by accepting an assignment of rights and liabilities under a purchase
agreement, and agreeing to indemnify the purchaser for tort damages, some of
which allegedly occurred in Texas, Koll has become
amenable to suit in Texas, despite its own lack of minimum contacts
thereto.”  No. 01-02-01330-CV, 2003 WL
22382623 at * 1 (Tex. App.—Houston [1st
Dist.] Oct. 16, 2003).

            In Purseley, the
court recounted the various corporate name changes, mergers, and spin-offs, and
examined the Agreements at issue.  Id. at
*1–2.  In concluding that Koll was not subject to jurisdiction in the Texas court, the
Purseley court noted that “[n]owhere in the record does Koll
assume ‘contractual liability’ to third parties for the torts allegedly
committed by Kellogg in Texas.”  Id. at
*4.  Further, the court stated that at
most, Koll received its predecessor’s “responsibility
to indemnify Dresser” for any liabilities that Dresser may
suffer as a result of Kellogg’s closed contracts.  Id. (emphasis
in original).   Thus, the court went on
to examine “whether an agreement to indemnify another for losses incurred in Texas, which a
nonresident corporation acquires by assignment, is a sufficient basis for
asserting personal jurisdiction over the nonresident corporation,” and concluded
that it was not.  Id.  The court cited to two Texas cases in
support of its decision: one, finding an indemnification agreement was “not a
substantial connection” between the defendant and Texas;[9] and
the other, finding that a reinsurance contract was not a sufficient minimum
contact which would permit a Texas court to
assume personal jurisdiction over the foreign corporation.[10]  Id. at *4.

            The Purseley court
also noted that, because the plaintiffs were alleging only specific
jurisdiction, as they do in this case, even if an indemnity obligation were
sufficient to establish a minimum contact with Texas, asserting
jurisdiction over Koll would be improper because the
cause of action does not arise from the contact, that is, the indemnity
agreement.  Id. at
*5.  Instead, plaintiffs assert asbestos
related injuries, not that Koll has breached any
duties it may have under the agreements at issue.  Id.  The Purseley court concluded plaintiffs were unable to assert
specific jurisdiction over Koll.  Id.

            We
agree with the conclusions of the First Court of Appeals.  In this case, like Purseley, there is no dispute
that Koll itself does not have sufficient minimum
contacts to assert jurisdiction over it, nor do appellees
contend Koll is liable under article 5.10 of the
Texas Business Corporation Act.  See Tex.
Bus. Corp. Act Ann. art. 5.10 (B)(2) (providing that a successor
corporation may be liable for obligations expressly assumed).[11]  Instead, appellees
assert specific jurisdiction based upon an alleged contractual assumption of
liability.  However, as in Purseley, there
is no record evidence that Koll agreed to assume
liability for the torts of Kellogg. 

            Beginning
with the Purchase Agreement, Henley I, Kellogg, and Kellogg Newco
One, Inc. agreed to sell all rights and interests in Kellogg’s “open contracts
or jobs.”  Dresser agreed to assume the
liabilities arising out of those contracts and jobs.  Excluded from that assumption of liability
were those liabilities relating to closed jobs or contracts.  Because there is no other disposition
regarding the liabilities for closed contracts or jobs within the Purchase
Agreement, the record reflects that those liabilities remained with the Kellogg
entities.  There was however, no
assumption of liability by Henley I within the Agreement.[12]

            Also,
although in the Purchase Agreement Henley I and the Kellogg entities agreed to
indemnify Dresser regarding closed contracts or jobs, this is not evidence of
an assumption of liability by Henley I. 
It is, at most, as the First Court of Appeals concluded, an indemnity
agreement.  Moreover, although Henley I
is referenced as the parent of Kellogg within the Purchase Agreement, appellees do not allege that Henley I is liable as the
parent corporation, nor is there any evidence in the record establishing that
Henley I had such control over Kellogg that we could impute its contacts to
Henley I.  See Marchand, 83 S.W.3d at 799; see also Baldwin, 36 S.W.3d at 278 (noting
that plaintiff did not prove sufficient control because the record was silent
on the issue); Seminole, 979 S.W.2d
at 739 (rejecting the argument that the parent’s corporate structure evidenced
“control”).  Thus, as stated by our
sister court, the Purchase Agreement indicates that Henley I’s
obligations under the agreement are indemnity obligations regarding closed
contracts or jobs.  There is no
indication in the document that Henley I agreed
to assume liability for Kellogg’s torts. 

            In
addition, in the Transition Agreement between Henley I and Henley II, Henley II
acquired “assets and businesses” of Henley I, including “commitments” relating
to the “M.W. Kellogg Company Disposition.”
(Emphasis added).  However, because the
record indicates that Henley I’s only obligation
regarding that disposition was an indemnity obligation for losses due to closed
contracts or jobs, Henley II did not acquire any obligations beyond that, and
consequently, did not acquire any liability regarding Kellogg’s torts.  Finally, under the Assignment between Henley
I, Henley II, and Dresser, wherein Henley II acquired all obligations of Henley
I under the Dresser Purchase Agreement, Henley II’s
obligations by virtue of that Assignment are necessarily limited to the
obligations of Henley I under the Purchase Agreement, or in other words, as an indemnitor only.[13]

            We
also agree with the reasoning as set forth in Purseley regarding the indemnity
obligations serving as a “minimum contact.” 
Thus, even assuming the indemnity obligation sufficed as a minimum
contact, because the plaintiffs’ cause of action did not arise from the
indemnity agreement, they cannot assert specific jurisdiction over Koll based on these agreements.  See Purseley, 2003 WL 22382623, at *5.  

Conclusion

            Based
upon the foregoing, we conclude that the record does not support an assertion
of personal jurisdiction over Koll.  The record does not reflect that Koll has sufficient minimum contacts with Texas such that
an assertion of personal jurisdiction would comport with due process.  In addition, appellees
have not established that the Texas contacts
of Kellogg may be imputed to Koll.  We sustain Koll’s
issue on appeal, reverse the order denying Koll’s
special appearance, and remand the case with instructions to dismiss the claims
against Koll for lack of personal jurisdiction.  

 

                                                                                    

                                                                        /s/        Eva M. Guzman

                                                                                    Justice

 

Judgment
rendered and Opinion filed February
 12, 2004.

Panel
consists of Justices Hudson, Edelman, and Guzman.

 

 











            [1]  These plaintiffs are: Alton P. Howard, Jr., Charles E.
Jackson, Marvin Jackson, Jesse L. Julius, Martin J. Katz, Tommy Laird, Willie
Manning, Joseph A. Marullo, Estate of Howard A.
Powell, Sr., Joe H. Skipper, Curtis L. Smith, Albert T. Williams, and Richard
Williams. 





            [2]  According to the affidavit of WFI’s general counsel, the reverse spinoff
occurred in January 1988.





            [3]  Kellogg has undergone a number of name
changes since 1988.  Following the sale
of its assets to Dresser, Kellogg became Henley/MWK Holdings, Inc.  In April 1988, its name was again changed to
KELL Holdings Corporation, then in July 1989, KELL Holdings was merged into Resco Holdings, Inc., a subsidiary of WGI.  WGI has undergone several name changes since
1988 also. 





            [4]  Currently, Koll
operates as “California Coastal Communities.” 






            [5]  Appellees do not
make any argument regarding Pullman’s contacts with Texas and presumably, reference
that company only as Kellogg’s corporate predecessor.  





            [6]  Koll summarizes appellees jurisdictional argument as appellees
attempting to impute the contacts of Kellogg to Kellogg’s parent, Henley I, and
then impute those contacts to the parent’s assignee, Henley II, and further
imputing those contacts to the assignee’s successor, Koll.





            [7]  In their Response, appellees
stated: “The issue is not whether Koll is the
corporate successor to M.W. Kellogg Company. 
Even assuming that Resco Holdings Inc. is the
corporate successor of Kellogg, Koll is responsible
for the liabilities of M.W. Kellogg.” 
Thus, in referring to Koll as a “corporate
successor,” appellees presumably use that term based
upon the series of transactions between the corporate entities detailed above
as opposed to the meaning associated with that term under the Texas Business
Corporation Act.  See Tex. Bus. Corp. Act art.
5.10 (B)(2) (providing that a successor corporation may be liable for
obligations expressly assumed).





            [8]  We are mindful, on review, that the issue of
ultimate liability is not a jurisdictional issue.  Bottle
Rock, 108 S.W.3d at 549.  However, in
this case, because jurisdiction is alleged to exist solely by virtue of contracts
which plaintiffs contend also establishes liability, the jurisdictional issue
is inherently intertwined with the question of liability.  However, we are not deciding, nor attempting
to decide, any issues of ultimate liability and limit our findings to the
jurisdictional issue, based solely upon the record before us.  





            [9]  See Gessman v. Stephens, 51 S.W.3d 329, 337 n.5 (Tex.
App.—Tyler 2001, no pet.). 





            [10]  See Malaysia British Assur. v. El Paso Reyco, Inc., 830 S.W.2d 919, 920 (Tex. 1992).  





            [11]  Article 5.10 of the Texas Business
Corporation Act delineates two exceptions to successor non-liability which
apply in the context of an corporate asset purchaser.  Shapolsky v. Brewton,
56 S.W.3d 120, 139 (Tex. App.—Houston [14th Dist.] 2001, pet.
denied); see Tex. Bus. Corp. Act Art. 5.10. The first arises where the
purchaser expressly assumes the seller’s liabilities.  See Shapolsky, 56 S.W.3d at 139.  The second comes into play where an exception
is “expressly provided by another statute.” 
Id.; see also McKee v. Am. Transfer & Storage, 946 F. Supp. 485,
486–87 (N.D. Tex. 1996) (noting that Texas law does not generally
recognize successor liability for subsequent purchases of corporate assets); Mudgett v. Paxson Mach.
Co., 709 S.W.2d 755, 756–59 (Tex. App.—Corpus Christi 1986, writ ref’d n.r.e.)  (noting that the Texas Business &
Corporations Act eliminates the doctrine of implied successor liability).    





            [12]  There is no evidence to indicate the
plaintiffs’ injuries in this case were due to “closed contracts or jobs” or
“open contracts or jobs.”   





            [13]  Appellees also
argue that a letter, dated June 13, 1990, from the Henley Group’s
General Counsel indicates Henley II is responsible for indemnification
obligations under the Dresser agreement. 
Specifically, the letter states: “Resco
Holdings, Inc. is the corporate successor to The M.W. Kellogg Company by
operation of law, and it is in that entity that any indemnity obligations of
the M.W. Kellogg Company under the Purchase Agreement now reside.”  This does not evidence an assumption of
liability and further, we do not disagree that Henley II may have indemnity
obligations under the agreements at issue, as evidenced in this opinion.  However, appellees
assert personal jurisdiction over Koll based upon its
having assumed liabilities of Kellogg. 
This alleged assumption of liability is not evidenced in the
record.  We note also, appellees reference page 2 of the letter, however, that
page is missing from the record, including the supplemental record.