**SPIR STAR AG, Appellant,**

**v.**

**Louis KIMICH, Appellee.**

No. 01–06–00129–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 8, 2007.

Rick Lee Oldenettel, Thomas C. Folsom, Oldenettel & Dies, Houston, for Appellant.

Keith M. Fletcher, Simmons & Fletcher, P.C., Scott Rothenberg, Law Office of Scott Rothenberg, Houston, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and HIGLEY.

## MEMORANDUM OPINION

EVELYN V. KEYES, Justice.

Appellant, Spir Star AG, files this interlocutory appeal challenging the trial court's denial of its special appearance motion. In two points of error, appellant contends that the trial court erred in denying its motion because it did not purposefully avail itself of the benefits and protections of Texas law and does not have continuous and systematic contacts with Texas.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On March 24, 2003, Louis Kimich, the appellee, was injured on the job when the insert of a high-pressure hose broke and struck and punctured his arm. The hose was manufactured by Spir Star AG ("AG") and sold to Kimich's employer, AquaDrill, Inc. ("AquaDrill"), by Spir Star, Ltd.

("Limited"). On June 30, 2003, in response to his injury, Kimich filed a lawsuit against several parties, including his employer, but not AG or Limited. On February 22, 2005, Kimich filed his fifth amended original petition, which named AG as a defendant; Limited had been named as a defendant in a previous petition and did not contest the jurisdiction of the court. On July 25, 2005, AG filed a special appearance with the trial court contesting the court's exercise of personal jurisdiction over it, which the trial court denied without issuing findings of fact or conclusions of law. AG appeals.

AG, a German corporation headquartered in Germany, manufactures high pressure hoses and fittings for sale on the German and international markets. AG is owned by three German citizens: Werner Büchner, Gerhard Strobach, and Walter de Graaf. In 1995, AG established an overseas operation in Houston named Spir Star, Ltd., to solicit and receive orders for its hoses, complete final assembly of the hoses per customer demands, and ship orders to their final destinations in North and South America, including Houston. Büchner, Strobach, and de Graaf each own 25% of Limited; the remaining 25% is owned by Tony Bessette, Joachim Vogler, and Joseph Derzaph, Limited's technical manager. De Graaf serves as president of both AG and Limited; he owns a home in Houston and spends at least six months out of the year in Houston.

According to AG's website: "In order to cover the world-wide market and provide quick service to our customers, office [sic] were opened in the following countries: SPIR STAR S.A.R.L. 1991 in Haguenau/France, SPIR STAR [Ltd.] 1995 in Housten[sic]/Texas (U.S.A.) and SPIR STAR Asia Pty. Ltd. 1999 in Singapore." Similarly, AG's website states:

As a result of the ever-growing demand for high pressure hose, the decision was made that the company should expand its activities out of Europe. With an objective to provide the customer with the highest quality of service on an international scale, in 1995, we ventured across the Atlantic and founded SPIR STAR, Ltd. in Houston, Texas.

Having more than 1,000 customers from a variety of industries, today this successful company is the main link for our growing market share in North and South America.

AG's board selected Houston as the location for a North American operation, and de Graaf traveled to Houston and selected the location, hired an attorney in Houston to form the company, and hired Bessette to run the company as its vice president. AG's board also passed a resolution allowing Limited to use "Spir Star" in its name. AG neither licenses the use of the "Spir Star" name to Limited nor charges Limited for its use.

Once Limited was formed, Limited ordered the necessary equipment for assembling the hoses from AG, and AG delivered and installed the equipment in Houston. Since then, AG has sold millions of dollars worth of product to Limited. AG ships the product such that title to the product passes to Limited in Europe, and Limited then transports the product to Houston for final assembly. To pay for the product it orders from AG, Limited writes a check drawn on a Texas bank and mails it to AG in Germany.

## STANDARD OF REVIEW

Whether a court has personal jurisdiction over a defendant is a question of law subject to de novo review. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002); *Glattly v. CMS Viron Corp.,* 177 S.W.3d 438, 445 (Tex.App.-

Houston [1st Dist.] 2005, no pet.). The trial court, however, must frequently resolve questions of fact before deciding the jurisdiction question. *BMC Software*, 83 S.W.3d at 794. If the trial court enters an order denying a special appearance and issues findings of fact and conclusions of law, we may review the findings of fact on legal and factual sufficiency grounds and review the conclusions of law de novo as a legal question. *Silbaugh v. Ramirez*, 126 S.W.3d 88, 94 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (citing *BMC Software*, 83 S.W.3d at 794).

If the trial court does not issue findings of fact and conclusions of law, "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software*, 83 S.W.3d at 795. In other words, if the trial court does not issue findings of fact, a reviewing court should presume that the trial court resolved all factual disputes in favor of its judgment. *Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 246 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (citing *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002)). These findings are not conclusive when the appellate record includes both the reporter's and clerk's records, and they may be challenged for legal and factual sufficiency on appeal. *Id.* To the extent that the underlying facts are undisputed, however, we conduct a de novo review. *Glattly*, 177 S.W.3d at 445.

## ANALYSIS

AG argues that the trial court erred in denying its special appearance because it did not purposefully avail itself of the ben-

efits and protections of Texas law and does not have continuous and systematic contacts with Texas. Kimich responds that the court properly denied AG's special appearance because the record contains legally and factually sufficient evidence to support the trial court's decision.

## Personal Jurisdiction

■ Two requirements must be met before a Texas court can exercise personal jurisdiction over a nonresident defendant. First, the Texas long-arm statute must authorize the exercise of jurisdiction, and second, the exercise of jurisdiction must be consistent with the guarantees of due process. *Tri–State*, 184 S.W.3d at 248.

■ The long-arm statute permits Texas courts to exercise personal jurisdiction over a nonresident[1] defendant that "does business" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997); *BMC Software*, 83 S.W.3d at 795. The statute lists three activities that constitute "doing business": (1) contracting with a Texas resident when either party is to perform the contract in whole or in part in Texas; (2) committing a tort in whole or in part in Texas; and (3) recruiting Texas residents for employment inside or outside of Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042. This list, however, is not exclusive,[2] and the statute's "doing business" requirement is limited only by the requirements of federal due process guarantees. *Koll Real Estate Group, Inc. v. Purseley*, 127 S.W.3d 142, 146 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990)).

---

1. A "nonresident" includes "an individual who is not a resident of [Texas]" and "a foreign corporation, joint-stock company, association, or partnership." TEX CIV. PRAC. & REM.CODE ANN. § 17.041 (Vernon 1997).

2. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002).

With respect to personal jurisdiction, federal due process requires two things. First, the nonresident defendant must have purposefully established such minimum contacts with the forum state that the defendant could reasonably anticipate being sued there. *Glattly*, 177 S.W.3d at 447 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)). Second, if the nonresident defendant has purposefully established minimum contacts with the forum, the exercise of personal jurisdiction must also comport with traditional notions of fair play and substantial justice. *Id.* (citing *Burger King*, 471 U.S. at 475–76, 105 S.Ct. at 2183–84). As to fairness, the defendant bears the burden of presenting a "compelling case" that exercising jurisdiction over him would not be fair and just. *See id.* at 450. Only in rare cases, however, will a Texas court's exercise of personal jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex.1991).

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software*, 83 S.W.3d at 793. A nonresident defendant challenging the court's exercise of personal jurisdiction through a special appearance carries the burden of negating all grounds for personal jurisdiction alleged by the plaintiff. *Id.; Glattly*, 177 S.W.3d at 446.

### Minimum Contacts

A nonresident establishes minimum contacts with Texas by purposefully availing itself of the privileges and benefits inherent in conducting business in the state. *Koll*, 127 S.W.3d at 146. It is the quality and nature of the defendant's contacts, rather than their number, that is important to the minimum-contacts analysis. *Trigeant Holdings, Ltd. v. Jones*, 183 S.W.3d 717, 725 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). Random, fortuitous, or attenuated acts, or the unilateral acts of a third party, are not sufficient to confer personal jurisdiction. *Id.* Although not determinative, foreseeability is an important consideration in deciding whether a nonresident defendant has purposefully established minimum contacts. *Glattly*, 177 S.W.3d at 446–47.

The minimum contacts element of due process is further divided into specific and general personal jurisdiction. *Id.* at 447. A court may exercise specific jurisdiction over a nonresident defendant if his alleged liability arises from, or is related to, an activity conducted within the forum. *Id.* (citing *CSR, Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex.1996)). The contacts must be purposefully directed at the forum and have a "substantial connection" that results in the alleged injuries. *Shell Compañia Argentina de Petroleo, S.A. v. Reef Exploration, Inc.*, 84 S.W.3d 830, 837 (Tex. App.-Houston [1st Dist.] 2002, pet. denied). We focus our analysis on the relationship among the defendant, the forum, and the litigation. *Id.* A court may exercise general jurisdiction over a nonresident defendant if the defendant's contacts with the forum state are continuous and systematic, even if the cause of action did not arise from or relate to the defendant's contacts with the forum. *Glattly*, 177 S.W.3d at 447.

In this case, the trial court properly exercised general jurisdiction over AG. Kimich alleges in his pleadings that AG has extensive, long-term, systematic, and consistent ties with Texas, including significant sales made by AG to Limited over the

course of ten years; frequent communication between AG and Limited via facsimile, telephone, letter, and e-mail; common ownership and one common director; and the fact that AG gave Limited the right to use "Spir Star" in its name. AG responds that Kimich's cause of action does not arise out of any contacts initiated by AG because (a) AG has had no control over where the product purchased by Limited from AG would ultimately go because title to the product passed to Limited in Europe and (b) all orders were initiated by Limited. While it is true that AG did not solicit orders from Limited and title to any product shipped to Limited passes in Europe, AG established the relationship between itself and Limited. AG receives orders from Limited in Texas pursuant to contract, manufactures the product ordered, and ships its product to Limited in Texas.

AG established Limited in 1995. Although AG contends that the *owners* of AG, not AG itself, established Limited in Texas, AG's website states: "In order to cover the world-wide market and provide quick service to our customers, office [sic] were opened in the following countries: SPIR STAR S.A.R.L. 1991 in Haguenau/France, SPIR STAR [Ltd.] 1995 in Housten[sic]/Texas (U.S.A.) and SPIR STAR Asia Pty. Ltd. 1999 in Singapore." Additionally, according to Limited's website:

As a result of the ever-growing demand for high pressure hose, the decision was made that the company should expand its activities out of Europe. With an objective to provide the customer with the highest quality of service on an international scale, in 1995, we ventured across the Atlantic and founded SPIR STAR, Ltd. in Houston, Texas.

Having more than 1,000 customers from a variety of industries, today this successful company is the main link for our growing market share in North and South America.

AG's board chose Houston as the location for a North American operation, and de Graaf traveled to Houston and selected the location, hired an attorney to form the company, and hired Bessette to run the company. AG's board also passed a resolution allowing Limited to use the words "Spir Star" in its name for no charge and with no licensing agreement in place. Once Limited was formed, Limited ordered and AG delivered and installed the necessary equipment for assembly. Since then, Limited has been AG's sole distributor in North America.

AG has sold millions of dollars worth of product to Limited, which Limited receives in Houston, assembles in Houston to meet customer demands, and ships from Limited's plant in Houston to destinations throughout North America, including AquaDrill, Kimich's employer, in Harris County, Texas. In fact, Bessette identified the hose that injured Kimich as a hose manufactured by AG and sold to AquaDrill by Limited. To pay for the product it orders from AG, Limited writes a check drawn on a Texas bank and mails it to AG in Germany.

 We conclude that these actions either occurred in or were purposefully directed at Texas. *See Glattly*, 177 S.W.3d at 446–47 (citing *CSR*, 925 S.W.2d at 595); *Shell*, 84 S.W.3d at 837. We further conclude that these contacts with Texas were continuous and systematic. *See id.* at 447. None were random, fortuitous, or attenuated. *See Trigeant*, 183 S.W.3d at 725. Rather, AG purposefully availed itself of the privileges and benefits of conducting business in Texas. *See Koll*, 127 S.W.3d at 146. Thus, AG's actions in establishing and doing business with Limited constitute "doing business" in Texas and forming

contracts performable in part in Texas with a Texas company. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042; *BMC Software,* 83 S.W.3d at 795.

### *Fair Play and Substantial Justice*

■ Having found that AG purposefully established minimum contacts with Texas, we must consider whether the exercise of personal jurisdiction over it comports with traditional notions of fair play and substantial justice. *See Glattly,* 177 S.W.3d at 447 (citing *Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84). In making this inquiry, we consider, when appropriate, (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental, substantive social policies. *Guardian Royal,* 815 S.W.2d at 231.

First, there is no undue burden on AG in defending this case in Texas. Büchner, Strobach, and de Graff, AG's owners, each own 25% of Limited, which has not contested the trial court's exercise of jurisdiction and against whom Kimich's suit will go forward here in Texas. Furthermore, de Graaf is the president of both AG and Limited, owns a house in Houston, and spends at least six months of the year in Houston. Second, Texas has an interest in resolving this dispute because it involves the injury of a Texas resident and Texas has a substantial interest in protecting its citizens against harm from dangerous products entering this state. *See Gen. Refractories Co. v. Martin,* 8 S.W.3d 818, 823 (Tex.App.-Beaumont, 2000, pet. denied) (finding that Texas has a manifest interest in protecting residents exposed to products alleged to be unreasonably dangerous).

Third, Kimich, a Texas resident, can obtain the most convenient and efficient relief in Texas. Fourth, the efficient resolution of this controversy is promoted by adjudication in Texas because Limited has not contested jurisdiction; trying AG's suit against AG in Texas, rather than in Germany, will avoid duplication of efforts and minimize the possibility of inconsistent findings on common issues. *See J.D. Fields & Co., Inc. v. W.H. Streit, Inc.,* 21 S.W.3d 599, 605 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (finding the efficient resolution of controversy promoted by adjudication in Texas because suit against defendant company's surety was still pending in Texas and reconsolidating the suit against defendants with the suit against the surety avoided duplication of efforts and minimized the possibility of inconsistent findings on common issues). We will not address the fifth factor as only one state is involved in this dispute.

Accordingly, we hold that the trial court's exercise of personal jurisdiction over AG does not offend traditional notions of fair play and substantial justice. *Glattly,* 177 S.W.3d at 450 (citing *Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84). The trial court's exercise of personal jurisdiction over AG is supported by the evidence and is, therefore, proper.

We overrule AG's first and second points of error.

### CONCLUSION

We affirm the trial court's order denying AG's motion for special appearance.