**W. GESSMANN, GmbH, Appellant,**

v.

**Theresa STEPHENS a/n/f of Jennifer Michelle Stephens and Melissa Ann Stephens, Individually and on Behalf of the Estate of Haskell Dale Stephens & Lois Stephens, Appellees.**

No. 12–00–00383–CV.

Court of Appeals of Texas,
Tyler.

April 26, 2001.

William Hart, Diane Warlick, for Appellant.

Norman Jolly, Jr., for Appellee.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

DAVIS, Justice.

W. Gessmann GmbH ("Gessmann") brings this interlocutory appeal complaining of the trial court's denial of Gessmann's special appearance.[1] In two issues, Gessmann argues that the trial court erred in deciding that it had personal jurisdiction over Gessmann, a nonresident defendant. We reverse and remand to the trial court with instructions to dismiss Appellee, Theresa Stephens', claims against Appellant, W. Gessmann GmbH.

### FACTUAL BACKGROUND

The decedent of Appellee Theresa Stephens ("Stephens"), was killed when a Fellerbuncher, which is a tree-cutting machine used in the logging industry, was inadvertently activated due to an allegedly defective switch on the control handle or "joystick." Gessmann is a German company, who manufactured the plastic casing for the joystick, which it sold to Defendant OEM Controls, Inc. ("OEM"). OEM then sold the plastic casing to Tritec Marketing Co. ("Tritec"), who assembled the joystick using the plastic casing and other parts provided by OEM. Tritec, in turn, sold the assembled joystick to Blount, Inc., the manufacturer of the Fellerbuncher. Stephens sued Gessman and other defendants[2] based on strict products liability and served Gessmann at its place of business in Germany. Gessmann filed a spe-

---

1. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon 2001).

2. OEM Controls, Inc., Tritec Marketing Co. and Blount, Inc. are co-defendants with W. Gessmann GmbH in the underlying lawsuit.

cial appearance and, in due order of pleading, answered the lawsuit and moved to dismiss, alleging that the trial court lacked personal jurisdiction over Gessmann.

## PROCEDURAL BACKGROUND

The trial court set Gessmann's special appearance for hearing on December 4, 2000. Stephens filed a response on December 1, 2000, but did not serve the response on Gessmann's trial counsel until December 4, 2000, only moments prior to the hearing on Gessmann's special appearance. Over Gessmann's objection, the trial court considered Stephens' response and the evidence raised therein. In support of its special appearance, Gessmann filed an affidavit and a supplemental affidavit, which set forth in detail its lack of contact with the State of Texas.[3] In her response, Stephens argued that the following facts support her contention that the trial court did have personal jurisdiction: (1) Gessmann shipped four items directly to Texas F.O.B. Germany in response to unsolicited telephone orders, (2) on the reverse side of all of Gessmann's invoices for its products, there is language to the effect that Gessmann retains title to the product shipped until it has received complete payment for said product, and that this retention of title shall survive subsequent sales to third parties and subsequent installation of said product into any third party products, (3) Gessmann has agreed to indemnify, hold harmless, and defend OEM for all causes of action concerning its products, including product liability and personal injury claims, (4) Gessmann maintains a website, which contains their company name and logo and provides a link whereby a person accessing the site could e-mail Gessmann, and (5) OEM distributes the joystick casings for Gessmann in the United States, which would include the possibility of distribution in Texas.

At the conclusion of the hearing, the trial court denied Gessmann's special appearance. Gessmann made a request for findings of fact and conclusions of law. However, the trial court did not make findings and conclusions as requested. Gessmann timely filed this appeal.

## DISCUSSION

### DENIAL OF GESSMANN'S SPECIAL APPEARANCE
### Standard of Review

■■ Gessmann complains that the trial court improperly denied its special appearance. A nonresident defendant must negate all bases of personal jurisdiction to prevail in a special appearance. *CSR v. Link*, 925 S.W.2d 591, 596 (Tex.1996). The question of whether a trial court can assume personal jurisdiction over a nonresident defendant is a question of law that we will review *de novo. See De Prins v. Van Damme*, 953 S.W.2d 7, 13 (Tex.App.—Tyler 1997, writ denied), *cert. denied*, 524

---

**3.** The affidavits of a Gessmann representative sets forth the following facts that tend to negate personal jurisdiction: (1) Gessmann is a company organized under the laws of Germany and has its principal place of business in Germany, (2) Gessmann has never been licensed or authorized to do business in Texas, (3) Gessmann has never had officers, agents or employees in Texas conducting business, (4) Gessmann has never owned property in Texas, (5) Gessmann has never made monetary deposits or held bank accounts in Texas, (6) Gessmann has never had offices located in Texas, (7) Gessmann has never actively solicited business from Texas residents, (8) Gessmann has never advertised in Texas, (9) Gessmann has never been obligated to pay or paid taxes to the State of Texas, (10) Gessmann has never had a telephone, telephone number or mailing address in Texas, (11) Gessmann has never operated, conducted, engaged in, or carried on any business or business venture in Texas, and (12) Gessmann has never had any direct business contacts with other businesses in Texas.

U.S. 904, 118 S.Ct. 2060, 141 L.Ed.2d 138 (1998); *see also Hotel Partners v. Craig,* 993 S.W.2d 116, 120 (Tex.App.—Dallas 1994, writ denied). We review the trial court's resolution of any underlying factual questions for factual sufficiency of the evidence and will affirm the trial court's order on any legal theory that finds support in the evidence. *See Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991). When the trial court does not make any findings of fact or conclusions of law, any questions of fact must be presumed and found in support of the judgment. *See Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 666 (Tex.1987), *cert. denied,* 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 986 (1988).

 In reviewing the evidence, we consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *See Ames v. Ames,* 776 S.W.2d 154, 158–59 (Tex.1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990). If evidence supports the implied findings of fact, we will uphold the trial court's judgment on any legal theories supported by the findings. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). Ultimately, we must affirm, unless we decide, based on all of the evidence in the record and facts presumed resolved in support of the trial court's ruling, that Gessmann negated all bases of personal jurisdiction. *See CSR v. Link,* 925 S.W.2d at 596; *Guardian Royal,* 815 S.W.2d at 226; *Otis Elevator Co.,* 734 S.W.2d at 662.

### Bases of Personal Jurisdiction

 A court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Texas Long Arm statute are satisfied. *See* U.S. Const. amend. XIV, § 1; Tex.Civ. Prac. & Rem.Code Ann. § 17.041 (Vernon 2001) *et. seq.; Hall v. Helicopteros Nacionales De Colombia, S.A.,* 638 S.W.2d 870, 872 (Tex.1982), *rev'd on other grounds,* 466 U.S. 408, 413-14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404 (1984). The Texas Long Arm Statute has been interpreted to be co-extensive with the due process limits of the United States Constitution. *See Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990); *Hall,* 638 S.W.2d at 872. It follows that if the exercise of personal jurisdiction satisfies the Due Process Clause of the United States Constitution, then the Texas Long Arm Statute is satisfied. *See CSR v. Link,* 925 S.W.2d at 594; *Guardian Royal,* 815 S.W.2d at 226.

 Under the Due Process Clause, a defendant must have certain minimum contacts with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). A nonresident defendant that has purposefully availed itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985). A defendant should not be subject to the jurisdiction of a foreign court based upon "random," "fortuitous," or "attenuated" contacts. *Id.* Minimum contacts are particularly important when the defendant is from a different country because of the unique and onerous burden placed on a party called upon to defend a suit in a foreign legal

system. *See Asahi Metal Industry Co., Ltd. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

### Specific versus General Jurisdiction

A trial court can obtain personal jurisdiction over a defendant either by a finding of specific or general jurisdiction. *See CSR v. Link,* 925 S.W.2d at 595. When a cause of action relates to the defendant's contact with the forum, the "minimum contacts" requirement is satisfied, and "specific jurisdiction is proper, so long as that contact resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff." *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980); *see also Bearry v. Beech Aircraft Corporation,* 818 F.2d 370, 374 (5th Cir.1987). When the contact stems from a product, sold or manufactured by the foreign defendant, which has caused harm in the forum state, the court has specific jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state. *See World Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 567; *see also Bearry,* 818 F.2d at 374.

However, a nonresident defendant's mere awareness that its products might end up in the forum state is not enough to show that it purposely availed itself of the market of that forum State. *See CMMC v. Salinas,* 929 S.W.2d 435, 438 (Tex.1996) (citing *Asahi,* 480 U.S. at 110–11, 107 S.Ct. at 1031–32). There must be a *substantial connection* between the defendant and the forum State necessary for a finding of minimum contacts, which must come about by an action of the defendant purposefully directed toward the forum State. *Id.* (emphasis added). The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. *Id.* Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, **or** marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. *Id.* (emphasis added).

On the other hand, absent a finding of specific jurisdiction, general jurisdiction exists when a defendant's contacts are continuous and systematic, permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum State. *See CSR v. Link,* 925 S.W.2d at 595 (citing *Schlobohm,* 784 S.W.2d at 357). General jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction. *See Guardian Royal,* 815 S.W.2d at 228.

In the case at hand, the trial court did not make specific findings as to whether its grounds for personal jurisdiction over Gessmann were based on specific or general jurisdiction. As such, we consider both possibilities.

### Specific Jurisdiction

In addressing Stephens' points presented as support for her contention that the trial court's ruling was correct, Gessmann relies heavily on *CMMC v. Salinas,* 929 S.W.2d 435 (Tex.1996). In *Salinas,* Hill Country Cellars, a small winery in Texas, ordered a winepress from KLR Machines, Incorporated ("KLR"), a distributor of

wine-making equipment. *See CMMC,* 929 S.W.2d at 436. KLR, in turn, ordered the winepress from CMMC, a French manufacturer, instructing CMMC to arrange for shipment of the winepress F.O.B. to the port of Houston. *Id.* Thus, CMMC knew that the destination of the press was Texas. *Id.* Subsequently, a worker at Hill Country Cellars was injured while using the wine press and filed a lawsuit against CMMC. *Id.* at 437. In considering the court of appeal's reversal of the trial court's grant of CMMC's special appearance, the Texas Supreme Court noted that (1) CMMC did not directly market or advertise its equipment in the United States, other than providing KLR with promotional materials, (2) CMMC and KLR had no contractual relationship and shared no employees, (3) KLR advertised CMMC products, but the ads were not approved by CMMC, (4) CMMC had previously made a direct sale to another winery in Texas, (5) Hill Country Cellars never had any direct contact with CMMC, although CMMC did credit KLR for warranty work performed by KLR on the winepress purchased by Hill Country Cellars, (6) KLR advertised in nationally circulated magazines, but did not directly advertise in Texas, and (7) a KLR ad led to the sale of the winepress to Hill Country Cellars.[4] *Id.* at 436–37.

The Court then revisited the "stream of commerce" doctrine as espoused by the United States Supreme Court in *World-Wide Volkswagen Corp.,* as well as the Court's subsequent plurality decision in *Asahi,* as that decision related to the scope of the "stream of commerce" doctrine. *Id.*

In unanimously finding that personal jurisdiction did not attach to CMMC, the Texas Supreme Court held:

> CMMC's mere knowledge that its winepress was to be sold and used in Texas and its wiring the machine for use in the United States were not sufficient to subject CMMC to the jurisdiction of Texas courts. This evidence simply does not show that CMMC designed products for use in Texas, or that it made any effort to market them here, or that it took any other action to purposely avail itself of this market.

> It is neither unfair nor unjust to require Salinas to litigate his disputes with CMMC at CMMC's place of business when neither he nor his employer ever had any contact whatever with CMMC in Texas.

*Id.* at 439.

 In our view, given the factual similarities between the two cases, the holding in *Salinas* controls the instant case. The fact that OEM distributes Gessmann's plastic casings for Tritec's joysticks in the United States generally is insufficient to give rise to personal jurisdiction. In *Salinas,* KLR distributed, marketed and advertised nationally on behalf of CMMC. *Id.* at 437. Hill Country Cellars bought the very winepress at issue in that case as a direct result of one of KLR's advertisements. *Id.* Like the relationship between KLR and CMMC, there is no contractual agreement as to the marketing and distribution of products between OEM and Gessmann.[5]

---

**4.** CMMC's winepress was not pictured in any of KLR's magazine advertisements. *See Salinas,* 929 S.W.2d at 437.

**5.** Stephens raises the issue that the indemnification agreement between OEM and Gessmann would be sufficient evidence to support personal jurisdiction. We disagree. In *Asahi,* the U.S. Supreme Court listed as a form

of "additional conduct" the marketing of the product through a distributor who has *agreed* to serve as the sales agent in the forum State. *See Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032. We do not find the indemnification agreement at issue to be a substantial connection between Gessmann and the State of Texas. *Id.* at 110–12, 107 S.Ct. at 1031–32. While an

 Further, the fact that Gessmann shipped four items directly to Texas F.O.B. Germany, in response to unsolicited telephone orders would likewise not give rise to specific jurisdiction. *Id.* In *Salinas,* CMMC knew that the very winepress at issue in that lawsuit was to be sold and used in Texas. *Id.* Moreover, CMMC had previously made a direct sale of equipment to another winery in Texas. *Id.* at 436. It is not clear from the record whether the four orders filled by Gessmann in Texas were joystick casings or spare parts. In any event, single or even occasional acts are not sufficient to support jurisdiction, if, as here, their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum. *Id.* at 439 (citing *Burger King,* 471 U.S. at 475 n. 18, 105 S.Ct. at 2184 n. 18); *International Shoe,* 326 U.S. at 318, 66 S.Ct. at 159. Here, even assuming that the four items shipped were the joystick casings similar to the one at issue in this case, given the Supreme Court's analysis in *Salinas,* we cannot regard these isolated, unsolicited instances as more than an attenuated affiliation with the State of Texas. *Id.*

 Moreover, Gessmann's retention of title in the casings for the joysticks that might possibly find their way into machinery used in Texas will not suffice to give rise to personal jurisdiction. In order for the minimum contacts requirement of specific jurisdiction to be satisfied, it is essential that the cause of action relate to the defendant's contact with the forum State. *See World-Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. at 567–68. In the instant case, Stephens' lawsuit involves a cause of action for products liability. Stephens' allegations against Gessmann do not involve any questions of title or any dispute over a security interest retained by Gessmann in the joystick casings at issue. Further still, in *Salinas,* there is nothing to suggest anything but that the transfer of title of the winepress at issue in that case took place in Texas.[6] *See Salinas,* 929 S.W.2d at 436. The fact that the transfer of title to the piece of equipment that was at issue in *Salinas* took place in Texas did not change the Supreme Court's decision that personal jurisdiction could not attach. Thus, we are likewise not swayed by the possibility that, in this case, title could have transferred in Texas with regard to certain items initially sold by Gessmann to OEM.

 Finally, we must decide if Gessmann's website, which provides a link whereby a person, conceivably a Texan, accessing the site could e-mail Gessmann about their products. Gessmann cites *Mink v. AAAA Dev. LLC,* 190 F.3d 333 (5th Cir.1999) to support its proposition that its website should not be a proper basis for personal jurisdiction. In *Mink,* the Fifth Circuit, citing *Zippo Mfg. Co. v.*

indemnification agreement certainly contemplates the possibility of litigation, it does not represent the sort of purposeful direction of activities toward the forum State as contemplated by the Supreme Court in *Asahi. Id.* The Supreme Court in *Salinas* did not find such an arrangement sufficient to give rise to personal jurisdiction, and given the facts of the present case, neither will we.

**6.** Where the term "f.o.b." (free on board) is used in an executory contract of sale, in the absence of express provision for retention of title pending inspection, the term will be construed to require the seller to deliver the goods without expense to the buyer at the place and time mentioned, where title passes. *See Ehrenberg v. Guerrero,* 225 S.W. 86, 88 (Tex.Civ.App.—El Paso 1920, no writ). In *Salinas,* the winepress at issue was shipped FOB port of Houston, and there is no indication that there was any other agreement as to where the title transfer was to take place. *See Salinas,* 929 S.W.2d at 436.

*Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997), explained:

> The Zippo decision categorized Internet use into a spectrum of three areas. At one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the Internet.' In this situation, personal jurisdiction is proper. At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of the information that occurs on the website.

*See Mink,* 190 F.3d at 336. The Fifth Circuit found the reasoning in *Zippo* persuasive, and adopted it. *Id.* The Fifth Circuit recently extended its adoption of the *Zippo* approach to apply to cases involving specific jurisdiction as well as general jurisdiction. *See Revell v. Lidov,* 2001 WL 285253 *4, 2001 U.S. Dist. LEXIS 3133, *11 (5th Cir. March 20, 2001). In *Mink,* the website at issue posted information about products and services, provided users with a printable mail-in order form, posted a toll-free telephone number, a mailing address and an e-mail address. *Id.* at 336–37. The Fifth Circuit held that the website at issue in that case was nothing more than a passive advertisement, which was not grounds for the exercise of personal jurisdiction. *Id.* at 337.

The *Zippo* approach adopted by the Fifth Circuit has also been applied in the same or similar fashion by other Texas Courts of Appeals. *See e.g., Michel v. Rocket Eng'g. Corp.,* 45 S.W.3d 658 (Tex. App.—Fort Worth 2001, no pet. h.); *Jones v. Beech Aircraft Corp.,* 995 S.W.2d 767, 772 (Tex.App.—San Antonio 1999, pet. dism. w.o.j.). We likewise find the reasoning espoused in *Zippo* persuasive, and adopt it in cases involving general or specific jurisdiction. In the case at hand, the website at issue posts Gessmann's name, company logo and provides a link to e-mail Gessmann. While this website would fall in the middle of the spectrum as defined in *Zippo,* it is certainly more passive than the website at issue in *Mink. See Mink,* 190 F.3d at 336–37. We therefore find that Gessmann's website is too passive to provide a proper basis for personal jurisdiction.

Due to the lack of evidence to support any substantial or purposeful contacts with Texas related to Stephens' cause of action, we hold that the evidence does not demonstrate a proper basis for specific jurisdiction.

### General Jurisdiction

To reiterate, general jurisdiction exists when a defendant's contacts are continuous and systematic, permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum State. *See CSR,* 925 S.W.2d at 595 (citing *Schlobohm,* 784 S.W.2d at 357). In considering whether the trial court had a basis to assert general jurisdiction over Gessman, the Supreme Court's opinion in *CSR v. Link* is instructive. In *CSR,* the Texas Supreme Court issued a writ of mandamus to prevent a trial court from asserting jurisdiction over an Australian company that sold 363 tons of raw asbestos to Johns Manville, a Unit-

ed States company, which, in turn, shipped the asbestos to Houston. *See CSR*, 925 S.W.2d at 593–94.

The Supreme Court held that CSR did not have continuous and systematic contacts with Texas sufficient to support general jurisdiction. *Id.* at 595. The court noted that CSR had no offices, employees, or bank accounts in Texas. *Id.* CSR had not solicited business in or sent correspondence to Texas. *Id.* CSR had never owned property, paid taxes, or entered into a contract in Texas. *Id.*

■ In the present case, the lack of contact with Texas demonstrated by Gessmann closely resembles the situation in *CSR*. Gessmann's direct contacts with Texas were isolated and unsolicited. Gessmann's indemnification agreement with OEM and its title retention clause create speculative contact with Texas at best, and do not approach a systematic and continuous nature. As for OEM's role as distributor for Gessmann, even if there was evidence of a contractual relationship related to the distribution and marketing of Gessmann's products, there is still no evidence to support that OEM regularly distributes Gessmann's products in Texas on any level, much less systematically and continuously. As for Gessmann's web site, its passive nature simply cannot provide an adequate basis for personal jurisdiction. *See Mink*, 190 F.3d at 336–37. The record otherwise reflects that Gessmann is a German company that has no offices, employees or bank accounts in Texas. Gessmann has not solicited business in Texas, nor has it owned property, paid taxes or entered into a contract in Texas. Therefore, since Gessmann has no systematic and continuous contacts with the State of Texas, we hold that there is no basis for general jurisdiction over Gessmann.

### Fair Play and Substantial Justice

■ The trial court's exercise of personal jurisdiction is proper only to the extent that, as to the nonresident defendant, it does not offend traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184. As the supreme court stated in *Salinas*, "[a] manufacturer cannot fairly be expected to litigate in every part of the world where its products may end up; its contacts with the forum must be purposeful...before it can constitutionally be subjected to personal jurisdiction." *See Salinas*, 929 S.W.2d at 440. As we have determined that there are not sufficient contacts to provide a basis for personal jurisdiction, fairness and justice are, no doubt, served by our holding that personal jurisdiction cannot attach to Gessmann under these circumstances.

### Applicability Notice Provisions of Texas Rule of Civil Procedure 21 to Serving Responses

■ Gessmann also complains that the trial judge abused his discretion by considering evidence raised in Stephens' response to Gessmann's special appearance, which was served on Gessmann only moments before the hearing. Gessmann argues that Texas Rule of Civil Procedure 21 requires that a response be served at least three days prior to a hearing. However, since we have found that, even considering the evidence raised in Stephens' response, the trial court had no basis for personal jurisdiction over Gessmann, we need not consider this issue.[7]

---

7. Assuming that Gessmann's interpretation of Rule 21 is the correct one, it is conceivable that a party could file a motion and set it for hearing three days later, thereby requiring the opposing party to file a response that same day, or risk not being able to present evidence at the hearing. We doubt Rule 21 requires that all motions **and** responses be filed and

Accordingly, we *reverse* the order denying Gessmann's special appearance and *remand* the case with instructions that the trial court dismiss Stephens cause of action against Gessmann.

served at least three days prior to a hearing. Irrespective of this fact, this Court neither encourages nor endorses the use of the Rules of Civil Procedure, or, in circumstances like these, the absence of rules directly applicable to an issue, as a means to ambush opposing counsel. Such practice is clearly contrary to the objectives of the rules. *See* Tex.R.Civ.P. 1; *see also Stelly v. Papania,* 927 S.W.2d 620, 622 (Tex.1996) ("The purpose of the rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the litigants' rights under established principles of substantive law."); *Spiecker v. Petroff,* 971 S.W.2d 536, 539 (Tex.App.—Dallas 1997, no pet.) ("The rules were not designed as traps for the unwary nor should they be construed in order to prevent a litigant from presenting the truth to the trier of fact.").