# NO. 12-09-00142-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *REGIONAL UROLOGY, L.L.C., REGIONAL UROLOGY AMBULATORY SURGERY CENTER, LLC, REGIONAL UROLOGY PROPERTY GROUP, L.L.C., REGIONAL UROLOGY ONCOLOGY AND RADIATION TREATMENT CENTER, L.L.C., ANDREGIONAL UROLOGY ONCOLOGY AND RADIATION PROPERTY GROUP, L.L.C., APPELLANTS* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #2* |
| *DAVID T. PRICE, M.D., DAVID T. PRICE, M.D., A PROFESSIONAL MEDICAL CORPORATION AND UROLOGICAL ONCOLOGY SPECIALISTS, INC., APPELLEES* | § | *GREGG COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Regional Urology, L.L.C., Regional Urology Ambulatory Surgery Center, L.L.C., Regional Urology Property Group, L.L.C., Regional Urology Oncology and Radiation Treatment Center, L.L.C., and Regional Urology Oncology and Radiation Group, L.L.C., (collectively the "Regional Urology entities") appeal the trial court's order denying their special appearance in a suit filed by David T. Price, M.D., David T. Price, M.D., a Professional Medical Corporation, and Urological Oncology Specialists, Inc. (collectively the "Price entities"). In one issue, the Regional Urology entities argue that the trial court erred by denying their special appearance

1

because they negated all bases for personal jurisdiction. We affirm in part and reverse and remand in part.

## BACKGROUND

From 2001 to 2007, the Price entities had contractual relationships with the Regional Urology entities. On October 6, 2008, the Price entities filed suit against the Regional Urology entities alleging that they were entitled to relief under theories of breach of contract, promissory estoppel, tortious interference with both existing and prospective contracts, invasion of privacy, and business disparagement. Although each of the Regional Urology entities are Louisiana corporations, the Price entities brought suit in Texas. Thereafter, the Regional Urology entities filed a special appearance claiming that Texas courts lacked jurisdiction over them.

The record reflects that Regional Urology, L.L.C. had multiple contacts with Texas. It advertised in Texas by billboard, television, newspaper, the "Yellow Pages," and horse show publication advertisements. Regional Urology, L.L.C. also maintained an office in Marshall, Texas,[1] and contracted with Marshall Health Services, Inc., which operated the office for it. The record further indicates that Regional Urology, L.L.C. maintained a telephone listing in both the Carthage and Marshall, Texas telephone directories. Finally, the record reflects that Regional Urology, L.L.C. derived a portion of its income from Texas residents.[2]

The remaining Regional Urology entities do not have as many contacts with Texas. These entities do not advertise, maintain offices, or contract in Texas. Nonetheless, the record indicates that a portion of their respective incomes was derived from Texas residents.[3]

The trial court conducted a hearing on the Regional Urology entities' special appearance on April 17, 2009. Following the hearing, the trial court determined that Texas had general jurisdiction over all of the Regional Urology entities and denied their special appearance. This accelerated appeal followed.

---

[1] The record is unclear concerning the exact length of time that the Marshall office was open. The Regional Urology entities claimed that Regional Urology, L.L.C. maintained a Marshall office for some unidentified period of time until December 2003 and again from July 2007 until March 2008. The Price entities claimed that Regional Urology, L.L.C. operated an office in Marshall sporadically between 2002 and 2009.

[2] Patients with Texas zip codes accounted for 7.4% of the charges for the Regional Urology entities. These numbers were not further allocated among the different Regional Urology entities.

[3] *See* n.2.

In their sole issue, the Regional Urology entities argue that the trial court erred in denying their special appearance because they negated all bases of personal jurisdiction of Texas courts over them.

## Standard of Review

A nonresident defendant must negate all bases of personal jurisdiction to prevail in a special appearance. *CSR v. Link*, 925 S.W.2d 591, 596 (Tex. 1996). The question of whether a trial court can assume personal jurisdiction over a nonresident defendant is a question of law that we will review de novo. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *W. Gessmann, GmbH v. Stephens*, 51 S.W.3d 329, 334 (Tex. App.–Tyler 2001, no pet.). We review the trial court's resolution of any underlying factual questions for factual sufficiency of the evidence and will affirm the trial court's order on any legal theory that finds support in the evidence. *See Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). When, as here, the trial court does not make any findings of fact or conclusions of law, any questions of fact must be presumed and found in support of the judgment. *See Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987).

In reviewing the evidence, we consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *Stephens*, 51 S.W.3d at 335 (citing *Ames v. Ames*, 776 S.W.2d 154, 158–59 (Tex. 1989)). This court is not a fact finder and may not pass on the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if a different conclusion could be reached on the evidence. *See Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988); *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex. App.–Dallas 1986, writ ref'd n.r.e.). If evidence supports the implied findings of fact, we will uphold the trial court's judgment on any legal theory supported by the findings. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). Ultimately, we must affirm unless we decide, based on all of the evidence in the record and facts presumed resolved in support of the trial court's ruling, that the Regional Urology entities negated all bases of personal jurisdiction. *See Link*, 925 S.W.2d at 596; *Guardian Royal Exch.*, 815 S.W.2d at 226; *Otis Elevator Co.*, 734 S.W.2d at 662.

## Bases of Personal Jurisdiction

A court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Texas long arm statute are satisfied. *See* U.S. CONST. amend. XIV, § 1; TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–.042 (Vernon 2008); *Hall v. Helicopteros Nacionales De Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408, 413–14, 104 S. Ct. 1868, 1871–72, 80 L. Ed. 2d 404 (1984). The Texas long arm statute has been interpreted to be coextensive with the due process limits of the United States Constitution. *See Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990); *Hall*, 638 S.W.2d at 872. Thus, if the exercise of personal jurisdiction satisfies the Due Process Clause of the United States Constitution, then the Texas long arm statute is satisfied. *See Link*, 925 S.W.2d at 594; *Guardian Royal Exch.*, 815 S.W.2d at 226.

Under the Due Process Clause, a defendant must have certain minimum contacts with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)). A nonresident defendant that has purposefully availed itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S. Ct. 2174, 2183–84, 85 L. Ed. 2d 528 (1985). A defendant should not be subject to the jurisdiction of a foreign court based upon "random," "fortuitous," or "attenuated" contacts. *Id.*

Furthermore, the trial court's exercise of personal jurisdiction is proper only to the extent that, as to the nonresident defendant, it does not offend traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 476, 105 S. Ct. at 2184; *Guardian Royal Exch.*, 815 S.W.2d at 228. In determining whether the trial court's assertion of personal jurisdiction comports with fair play and substantial justice, we consider the following factors: (1) the burden on Regional Urology, L.L.C.; (2) the interest of Texas in adjudicating the dispute; (3) the Price entities' interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies. *See Guardian Royal Exch.*, 815 S.W.2d at 228. Only in rare instances will the exercise of personal jurisdiction

4

not comport with fair play and substantial justice once the minimum contacts analysis has been satisfied. ***Retamco Operating, Inc. v. Republic Drilling Co.***, 278 S.W.3d 333, 341 (Tex. 2009).

**General versus Specific Jurisdiction**

A trial court can obtain personal jurisdiction over a defendant either by a finding of general or specific jurisdiction. *See **Link***, 925 S.W.2d at 595. General jurisdiction is "personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." ***PHC-Minden L.P. v. Kimberly-Clark Corp.***, 235 S.W.3d 163, 166 (Tex. 2007) (quoting ***Helicopteros Nacionales de Colombia, S.A. v. Hall***, 466 U.S. 408, 414, n.9, 104 S. Ct. 1868, 1872 n.9, 80 L. Ed. 2d 404 (1984)). General jurisdiction requires that a defendant's contacts be continuous and systematic. *See **Link***, 925 S.W.2d at 595 (citing ***Schlobohm***, 784 S.W.2d at 357)). Furthermore, general jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction. *See **Guardian Royal Exch.***, 815 S.W.2d at 228. Usually, the defendant must be engaged in longstanding business in the forum state, "such as marketing or shipping products, or the performance of services or maintenance of one or more offices in the forum state; activities that are less extensive than that will not qualify for general in personam jurisdiction." *See **PHC-Minden***, 235 S.W.3d at 168 (quoting 4 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5). The analysis must be dispute blind because, for general jurisdiction to be properly exercised, the defendant must be subject to Texas courts for any dispute, even those wholly unrelated to the state. ***PHC-Minden***, 235 S.W.3d at 168. These contacts should be assessed over a reasonable number of years up to the date that the suit is filed. *Id.* at 170.

When a cause of action relates to the defendant's contact with the forum, the "minimum contacts" requirement is satisfied, and "specific jurisdiction is proper, so long as that contact resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff." *See **World-Wide Volkswagen Corp. v. Woodson***, 444 U.S. 286, 297–98, 100 S. Ct. 559, 567–68, 62 L. Ed. 2d 490 (1980); *see also **Bearry v. Beech Aircraft Corp.***, 818 F.2d 370, 374 (5th Cir. 1987). There must be a substantial connection between the defendant and the forum state necessary for a finding of minimum contacts, which must come about by an action of the defendant purposefully directed toward the forum state. *See **CMMC v. Salinas***, 929 S.W.2d 435, 438 (Tex. 1996). We direct our analysis to the relationship among the defendant, the forum, and

5

the litigation. ***Guardian Royal Exch.***, 815 S.W.2d at 228. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum state; for example, advertising in the forum state or establishing channels for providing regular advice to customers in the forum state. *See **Salinas***, 929 S.W.2d at 438.

<u>*General Jurisdiction-Regional Urology, L.L.C.*</u>

During July 2007 to March 2008, the record reflects that Regional Urology, L.L.C. maintained an office in Marshall, Texas. Regional Urology, L.L.C. argues that this was a temporary office. We disagree with this assessment. While the evidence indicates that the office was open only one day per week, Regional Urology, L.L.C.'s presence in Texas was continuous during that time. The evidence indicates that the office had Regional Urology's sign on it at all times. Moreover, Regional Urology was listed in the telephone directories for two Texas cities and was conducting advertising. In sum, the record supports that Regional Urology, L.L.C. was attempting to establish a business presence in Texas. While Regional Urology, L.L.C.'s attempt to have a Marshall office ultimately was unsuccessful, such failure does not attenuate the nature of the contact. Under these facts, we agree with the trial court that Regional Urology, L.L.C. had sufficient continuous and systematic contacts with Texas so as to permit Texas courts to exercise general jurisdiction over it.

We next consider whether the trial court's exercise of personal jurisdiction over Regional Urology, L.L.C. offends traditional notions of fair play and substantial justice. *See **Burger King***, 471 U.S. at 476, 105 S. Ct. at 2184; ***Guardian Royal Exch.***, 815 S.W.2d at 228. Here, the burden imposed on Regional Urology, L.L.C. in litigating the case in Texas is slight. Gregg County, Texas, where the suit was filed, is little more than a one hour drive from Regional Urology, L.L.C.'s main office. Further, because Price is a Texas resident and the dispute involves claims related to the taking of Texas patients, Texas has an interest in the dispute. Of course, we note that Louisiana also has an interest in the litigation. Indeed, additional litigation among the parties is pending in Louisiana, a factor the Regional Urology entities argue weighs against the Price entities' assertion of jurisdiction. We agree that some factors weigh against a Texas court's asserting jurisdiction over Regional Urology L.L.C. But having considered all of the factors, we conclude that the instant case is not one of the rare instances where the exercise of jurisdiction does not comport with fair play and substantial justice. As such, we hold that the

6

trial court properly overruled the Regional Urology entities' special appearance with regard to Regional Urology, L.L.C.

*General Jurisdiction-Remaining Regional Urology Entities*

With regard to the remaining Regional Urology entities, there are no continuous and systematic contacts with Texas. The affidavit of Brent L. Bodily set forth that Regional Urology, L.L.C. alone maintained the Marshall office. While certain responses to discovery identified Regional Urology, rather than Regional Urology, L.L.C., as the entity operating the Marshall office, we decline to conclude that such responses establish that the remaining Regional Urology entities were involved in the operation of that office. Significantly, in these discovery responses, the Regional Urology entities expressly stated that they would refer to themselves collectively as "'the Regional Urology entities' unless otherwise specified." In the responses, however, the Regional Urology entities did not refer to themselves collectively. Thus, we conclude that the discovery responses in question were not evidence supporting that the remaining Regional Urology entities had contacts with Texas.

Further, Regional Urology, L.L.C.'s contacts cannot be imputed to the other Regional Urology entities. *Id.* at 173 (Texas law presumes that two separate corporations are distinct entities.). Therefore, we hold that the trial court erred in finding that it had general jurisdiction over Regional Urology Ambulatory Surgery Center, L.L.C., Regional Urology Property Group, L.L.C., Regional Urology Oncology and Radiation Treatment Center, L.L.C., and Regional Urology Oncology and Radiation Group, L.L.C.

*Specific Jurisdiction-Remaining Regional Urology Entities*[4]

The Price entities further argue that specific jurisdiction exists over the Regional Urology entities because Regional Urology, L.L.C. maintained an office in Marshall and because Gerald Henry, M.D. and Thomas Palmer, M.D. sought to solicit, by written correspondence (the "solicitation letter"), at least one Texas patient of Dr. Price. As set forth above, the existence of the Marshall office demonstrates contacts that Regional Urology, L.L.C. maintained with Texas. However, Regional Urology, L.L.C.'s contacts are not imputed to the other Regional Urology entities. *See PHC-Minden*, 235 S.W.3d at 173.

---

[4] Because we have concluded that the trial court had general jurisdiction over Regional Urology, L.L.C., we need not include it in our analysis of whether the trial court had specific jurisdiction over the remaining Regional Urology entities. *See* TEX. R. APP. P. 47.1.

7

Moreover, the solicitation letter was written by a doctor who arguably had some connection to a Regional Urology entity. But there is nothing in the record to impute the existence of the Texas contact, if any, derived from this letter to any of the remaining Regional Urology entities. The letter does not contain the letterhead of any of the remaining Regional Urology entities. Moreover, the doctors do not identify themselves as members or officers of any of the remaining Regional Urology entities. *See Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 588 (Tex. App.–Houston [14th Dist.] 2005, no pet.) (actions of independent contractor, by themselves, not sufficient to subject nonresident corporation to jurisdiction of forum state) (citing *O'Quinn v. World Indus. Constructors, Inc.*, 874 F. Supp. 143, 145 (E.D. Tex.), *aff'd*, 68 F.3d 471 (5th Cir. 1995)). Thus, we conclude that specific jurisdiction does not exist over Regional Urology Ambulatory Surgery Center, L.L.C., Regional Urology Property Group, L.L.C., Regional Urology Oncology and Radiation Treatment Center, L.L.C., and Regional Urology Oncology and Radiation Group, L.L.C. Consequently, we hold that the trial court improperly overruled the Regional Urology entities' special appearance with regard to these remaining entities.

## CONCLUSION

We have held that the trial court properly overruled the Regional Urology entities' special appearance with regard to Regional Urology, L.L.C. We have further held that the trial court erred in overruling the Regional Urology entities' special appearance with regard to Regional Urology Ambulatory Surgery Center, L.L.C., Regional Urology Property Group, L.L.C., Regional Urology Oncology and Radiation Treatment Center, L.L.C., and Regional Urology Oncology and Radiation Group, L.L.C. As such, we have sustained the Regional Urology entities' sole issue in part and overruled it in part. Having done so, we *reverse* the trial court's order denying the Regional Urology entities' special appearance with regard to Regional Urology Ambulatory Surgery Center, L.L.C., Regional Urology Property Group, L.L.C., Regional Urology Oncology and Radiation Treatment Center, L.L.C., and Regional Urology Oncology and Radiation Group, L.L.C. and *remand* the case with instructions that the trial court *dismiss* the Price entities' causes of action against these entities for *want of jurisdiction*. We *affirm* the remainder of the trial court's order denying the Regional Urology entities' special appearance.

8

**BRIAN HOYLE**
Justice

Opinion delivered February 26, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

9