NO.
12-09-00142-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER,
 TEXAS

REGIONAL
UROLOGY, L.L.C.,                         §                  APPEAL FROM THE

REGIONAL
UROLOGY AMBULATORY

SURGERY
CENTER, LLC, REGIONAL

UROLOGY
PROPERTY GROUP, L.L.C.,

REGIONAL
UROLOGY ONCOLOGY

AND
RADIATION TREATMENT

CENTER, L.L.C.,
ANDREGIONAL

UROLOGY
ONCOLOGY AND

RADIATION
PROPERTY GROUP, L.L.C.,

APPELLANTS

                                                                          
§                   COUNTY COURT AT LAW #2 

V.

 

DAVID T.
PRICE, M.D., DAVID T.

PRICE, M.D.,
A PROFESSIONAL

MEDICAL
CORPORATION AND

UROLOGICAL
ONCOLOGY

SPECIALISTS,
INC.,

APPELLEES                                                   
 §                    GREGG COUNTY, TEXAS







MEMORANDUM OPINION

            Regional
Urology, L.L.C., Regional Urology Ambulatory Surgery Center, L.L.C., Regional
Urology Property Group, L.L.C., Regional Urology Oncology and Radiation
Treatment Center, L.L.C., and Regional Urology Oncology and Radiation Group,
L.L.C., (collectively the “Regional Urology entities”) appeal the trial court’s
order denying their special appearance in a suit filed by David T. Price, M.D.,
David T. Price, M.D., a Professional Medical Corporation, and Urological
Oncology Specialists, Inc. (collectively the “Price entities”).  In one issue,
the Regional Urology entities argue that the trial court erred by denying their
special appearance because they negated all bases for personal jurisdiction. 
We affirm in part and reverse and remand in part.

 

Background

From 2001 to 2007, the
Price entities had contractual relationships with the Regional Urology
entities.  On October 6, 2008, the Price entities filed suit against the
Regional Urology entities alleging that they were entitled to relief under
theories of breach of contract, promissory estoppel, tortious interference with
both existing and prospective contracts, invasion of privacy, and business
disparagement.  Although each of the Regional Urology entities are Louisiana
corporations, the Price entities brought suit in Texas.  Thereafter, the
Regional Urology entities filed a special appearance claiming that Texas courts
lacked jurisdiction over them.

The record reflects
that Regional Urology, L.L.C. had multiple contacts with Texas.  It advertised
in Texas by billboard, television, newspaper, the “Yellow Pages,” and horse
show publication advertisements.  Regional Urology, L.L.C. also maintained an
office in Marshall, Texas,[1]
and contracted with Marshall Health Services, Inc., which operated the office
for it.  The record further indicates that Regional Urology, L.L.C. maintained
a telephone listing in both the Carthage and Marshall, Texas telephone
directories.  Finally, the record reflects that Regional Urology, L.L.C.
derived a portion of its income from Texas residents.[2]

The remaining Regional
Urology entities do not have as many contacts with Texas.  These entities do
not advertise, maintain offices, or contract in Texas.  Nonetheless, the record
indicates that a portion of their respective incomes was derived from Texas
residents.[3]

The trial court
conducted a hearing on the Regional Urology entities’ special appearance on April
17, 2009.  Following the hearing, the trial court determined that Texas had
general jurisdiction over all of the Regional Urology entities and denied their
special appearance.  This accelerated appeal followed.

Personal
Jurisdiction

In their sole issue,
the Regional Urology entities argue that the trial court erred in denying their
special appearance because they negated all bases of personal jurisdiction of
Texas courts over them.

Standard of Review

A nonresident defendant
must negate all bases of personal jurisdiction to prevail in a special appearance.
 CSR v. Link, 925 S.W.2d 591, 596 (Tex. 1996).  The question of
whether a trial court can assume personal jurisdiction over a nonresident
defendant is a question of law that we will review de novo.  See BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); W.
Gessmann, GmbH v. Stephens, 51 S.W.3d 329, 334 (Tex. App.–Tyler
2001, no pet.).  We review the trial court’s resolution of any underlying
factual questions for factual sufficiency of the evidence and will affirm the
trial court's order on any legal theory that finds support in the evidence.  See
Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C., 815
S.W.2d 223, 226 (Tex. 1991).  When, as here, the trial court does not make any
findings of fact or conclusions of law, any questions of fact must be presumed
and found in support of the judgment.  See Zac Smith & Co. v.
Otis Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987).

In reviewing the
evidence, we consider and weigh all of the evidence, both the evidence that
tends to prove the existence of a vital fact as well as evidence that tends to
disprove its existence.  Stephens, 51 S.W.3d at 335 (citing Ames
v. Ames, 776 S.W.2d 154, 158–59 (Tex. 1989)).  This court is not a fact
finder and may not pass on the credibility of the witnesses or substitute its
judgment for that of the trier of fact, even if a different conclusion could be
reached on the evidence.  See Herbert v. Herbert, 754 S.W.2d 141,
144 (Tex. 1988); Clancy v. Zale Corp., 705 S.W.2d 820, 826 (Tex.
App.–Dallas 1986, writ ref=d n.r.e.).  If evidence
supports the implied findings of fact, we will uphold the trial court's
judgment on any legal theory supported by the findings.  See Worford
v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990).  Ultimately, we must
affirm unless we decide, based on all of the evidence in the record and facts
presumed resolved in support of the trial court’s ruling, that the Regional
Urology entities negated all bases of personal jurisdiction.  See Link,
925 S.W.2d at 596; Guardian Royal Exch., 815 S.W.2d at 226; Otis
Elevator Co., 734 S.W.2d at 662.

 

Bases
of Personal Jurisdiction

A court may assert
personal jurisdiction over a nonresident defendant only if the requirements of
both the Due Process Clause of the Fourteenth Amendment to the United States
Constitution and the Texas long arm statute are satisfied.  See U.S. Const. amend. XIV, § 1; Tex. Civ. Prac. & Rem. Code Ann. §§
17.041–.042 (Vernon 2008); Hall v. Helicopteros Nacionales De Colombia,
S.A., 638 S.W.2d 870, 872 (Tex. 1982), rev’d on other grounds,
466 U.S. 408, 413–14, 104 S. Ct. 1868, 1871–72, 80 L. Ed. 2d 404 (1984).  The
Texas long arm statute has been interpreted to be coextensive with the due
process limits of the United States Constitution.  See Schlobohm
v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990); Hall, 638
S.W.2d at 872.  Thus, if the exercise of personal jurisdiction satisfies the
Due Process Clause of the United States Constitution, then the Texas long arm statute
is satisfied.  See Link, 925 S.W.2d at 594; Guardian
Royal Exch., 815 S.W.2d at 226.

Under the Due Process
Clause, a defendant must have certain minimum contacts with the forum “such
that the maintenance of the suit does not offend ‘traditional notions of fair
play and substantial justice.’”  See Int’l Shoe Co. v. Washington,
326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quoting Milliken
v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)).
 A nonresident defendant that has purposefully availed itself of the privileges
and benefits of conducting business in the foreign jurisdiction has sufficient
contacts with the forum to confer personal jurisdiction.  See Burger
King Corp. v. Rudzewicz, 471 U.S. 462, 475–76, 105 S. Ct. 2174, 2183–84,
85 L. Ed. 2d 528 (1985).  A defendant should not be subject to the jurisdiction
of a foreign court based upon “random,” “fortuitous,” or “attenuated” contacts.
 Id.  

Furthermore, the trial
court’s exercise of personal jurisdiction is proper only to the extent that, as
to the nonresident defendant, it does not offend traditional notions of fair
play and substantial justice. See Burger King, 471 U.S. at
476, 105 S. Ct. at 2184; Guardian Royal Exch., 815 S.W.2d at
228.  In determining whether the trial court’s assertion of personal
jurisdiction comports with fair play and substantial justice, we consider the
following factors:  (1) the burden on Regional Urology, L.L.C.; (2) the
interest of Texas in adjudicating the dispute; (3) the Price entities’ interest
in obtaining convenient and effective relief; (4) the interstate judicial
system’s interest in obtaining the most efficient resolution of controversies;
and (5) the shared interest of the several states in furthering fundamental
substantive policies.  See Guardian Royal Exch., 815
S.W.2d at 228.  Only in rare instances will the exercise of personal
jurisdiction not comport with fair play and substantial justice once the
minimum contacts analysis has been satisfied.  Retamco Operating, Inc. v.
Republic Drilling Co., 278 S.W.3d 333, 341 (Tex. 2009).

General
versus Specific Jurisdiction

A trial court can
obtain personal jurisdiction over a defendant either by a finding of general or
specific jurisdiction. See Link, 925 S.W.2d at 595.  General
jurisdiction is “personal jurisdiction over a defendant in a suit not arising
out of or related to the defendant’s contacts with the forum.”  PHC-Minden
L.P. v. Kimberly-Clark Corp., 235 S.W.3d 163, 166 (Tex. 2007) (quoting Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, n.9, 104 S. Ct.
1868, 1872 n.9, 80 L. Ed. 2d 404 (1984)).  General jurisdiction requires that a
defendant's contacts be continuous and systematic.  See Link, 925
S.W.2d at 595 (citing Schlobohm, 784 S.W.2d at 357)).  Furthermore,
general jurisdiction requires a showing that the defendant conducted
substantial activities within the forum, a more demanding minimum contacts
analysis than for specific jurisdiction.  See Guardian Royal Exch.,
815 S.W.2d at 228.  Usually, the defendant must be engaged in longstanding
business in the forum state, “such as marketing or shipping products, or the
performance of services or maintenance of one or more offices in the forum
state; activities that are less extensive than that will not qualify for general
in personam jurisdiction.”  See PHC-Minden, 235 S.W.3d at
168 (quoting 4 Wright &
Miller, Federal Practice & Procedure § 1067.5).  The analysis
must be dispute blind because, for general jurisdiction to be properly
exercised, the defendant must be subject to Texas courts for any dispute, even
those wholly unrelated to the state.  PHC-Minden, 235 S.W.3d at
168.  These contacts should be assessed over a reasonable number of years up to
the date that the suit is filed.  Id. at 170.

When a cause of action
relates to the defendant’s contact with the forum, the “minimum contacts”
requirement is satisfied, and “specific jurisdiction is proper, so long as that
contact resulted from the defendant's purposeful conduct and not the unilateral
activity of the plaintiff.”  See World-Wide Volkswagen Corp. v.
Woodson, 444 U.S. 286, 297–98, 100 S. Ct. 559, 567–68, 62 L. Ed. 2d 490
(1980); see also Bearry v. Beech Aircraft Corp., 818 F.2d
370, 374 (5th Cir. 1987).  There must be a substantial connection between the
defendant and the forum state necessary for a finding of minimum contacts,
which must come about by an action of the defendant purposefully directed
toward the forum state.  See CMMC v. Salinas, 929 S.W.2d 435, 438
(Tex. 1996).  We direct our analysis to the relationship among the defendant,
the forum, and the litigation.  Guardian Royal Exch., 815 S.W.2d
at 228.  Additional conduct of the defendant may
indicate an intent or purpose to serve the market in the forum state; for
example, advertising in the forum state or establishing channels for providing
regular advice to customers in the forum state.  See Salinas, 929
S.W.2d at 438.

General
Jurisdiction-Regional Urology, L.L.C.

            During July 2007 to March
2008, the record reflects that Regional Urology, L.L.C. maintained an office in
Marshall, Texas.  Regional Urology, L.L.C. argues that this was a temporary
office.  We disagree with this assessment.  While the evidence indicates that
the office was open only one day per week, Regional Urology, L.L.C.’s presence
in Texas was continuous during that time.  The evidence indicates that the
office had Regional Urology’s sign on it at all times.  Moreover, Regional
Urology was listed in the telephone directories for two Texas cities and was
conducting advertising.  In sum, the record supports that Regional Urology,
L.L.C. was attempting to establish a business presence in Texas.  While
Regional Urology, L.L.C.’s attempt to have a Marshall office ultimately was
unsuccessful, such failure does not attenuate the nature of the contact.  Under
these facts, we agree with the trial court that Regional Urology, L.L.C. had
sufficient continuous and systematic contacts with Texas so as to permit Texas
courts to exercise general jurisdiction over it.

            We next consider whether the
trial court’s exercise of personal jurisdiction over Regional Urology, L.L.C. offends
traditional notions of fair play and substantial justice. See Burger
King, 471 U.S. at 476, 105 S. Ct. at 2184; Guardian Royal Exch.,
815 S.W.2d at 228.  Here, the burden imposed on Regional Urology, L.L.C. in
litigating the case in Texas is slight.  Gregg County, Texas, where the suit
was filed, is little more than a one hour drive from Regional Urology, L.L.C.’s
main office.  Further, because Price is a Texas resident and the dispute
involves claims related to the taking of Texas patients, Texas has an interest
in the dispute.  Of course, we note that Louisiana also has an interest in the
litigation.  Indeed, additional litigation among the parties is pending in
Louisiana, a factor the Regional Urology entities argue weighs against the
Price entities’ assertion of jurisdiction.  We agree that some factors weigh
against a Texas court’s asserting jurisdiction over Regional Urology L.L.C.  But
having considered all of the factors, we conclude that the instant case is not one
of the rare instances where the exercise of jurisdiction does not comport with
fair play and substantial justice.  As such, we hold that the trial court
properly overruled the Regional Urology entities’ special appearance with regard
to Regional Urology, L.L.C.

            General
Jurisdiction-Remaining Regional Urology Entities               

With regard to the
remaining Regional Urology entities, there are no continuous and systematic
contacts with Texas.  The affidavit of Brent L. Bodily set forth that Regional
Urology, L.L.C. alone maintained the Marshall office.  While certain responses
to discovery identified Regional Urology, rather than Regional Urology, L.L.C.,
as the entity operating the Marshall office, we decline to conclude that such
responses establish that the remaining Regional Urology entities were involved
in the operation of that office.  Significantly, in these discovery responses, the
Regional Urology entities expressly stated that they would refer to themselves
collectively as “‘the Regional Urology entities’ unless otherwise specified.” 
In the responses, however, the Regional Urology entities did not refer to
themselves collectively.  Thus, we conclude that the discovery responses in
question were not evidence supporting that the remaining Regional Urology
entities had contacts with Texas.

Further, Regional
Urology, L.L.C.’s contacts cannot be imputed to the other Regional Urology
entities.  Id. at 173 (Texas law presumes that two separate
corporations are distinct entities.).  Therefore, we hold that the trial court
erred in finding that it had general jurisdiction over Regional Urology
Ambulatory Surgery Center, L.L.C., Regional Urology Property Group, L.L.C.,
Regional Urology Oncology and Radiation Treatment Center, L.L.C., and Regional
Urology Oncology and Radiation Group, L.L.C. 

Specific Jurisdiction-Remaining
Regional Urology Entities[4]

            The Price entities further
argue that specific jurisdiction exists over the Regional Urology entities
because Regional Urology, L.L.C. maintained an office in Marshall and because
Gerald Henry, M.D. and Thomas Palmer, M.D. sought to solicit, by written
correspondence (the “solicitation letter”), at least one Texas patient of Dr.
Price.  As set forth above, the existence of the Marshall office demonstrates
contacts that Regional Urology, L.L.C. maintained with Texas.  However,
Regional Urology, L.L.C.’s contacts are not imputed to the other Regional
Urology entities.  See PHC-Minden, 235 S.W.3d at 173.

Moreover, the
solicitation letter was written by a doctor who arguably had some connection to
a Regional Urology entity.  But there is nothing in the record to impute the
existence of the Texas contact, if any, derived from this letter to any of the
remaining Regional Urology entities.  The letter does not contain the letterhead
of any of the remaining Regional Urology entities.  Moreover, the doctors do
not identify themselves as members or officers of any of the remaining Regional
Urology entities.  See Coleman v. Klockner & Co. AG, 180
S.W.3d 577, 588 (Tex. App.–Houston [14th Dist.] 2005, no pet.) (actions of
independent contractor, by themselves, not sufficient to subject nonresident
corporation to jurisdiction of forum state) (citing O’Quinn v. World
Indus. Constructors, Inc., 874 F. Supp. 143, 145 (E.D. Tex.), aff’d,
68 F.3d 471 (5th Cir. 1995)).  Thus, we conclude that specific
jurisdiction does not exist over Regional Urology Ambulatory Surgery Center,
L.L.C., Regional Urology Property Group, L.L.C., Regional Urology Oncology and
Radiation Treatment Center, L.L.C., and Regional Urology Oncology and Radiation
Group, L.L.C.  Consequently, we hold that the trial court improperly overruled
the Regional Urology entities’ special appearance with regard to these
remaining entities.

 

Conclusion

We have held that the
trial court properly overruled the Regional Urology entities’ special
appearance with regard to Regional Urology, L.L.C.  We have further held that
the trial court erred in overruling the Regional Urology entities’ special
appearance with regard to Regional Urology Ambulatory Surgery
Center, L.L.C., Regional Urology Property Group, L.L.C., Regional Urology
Oncology and Radiation Treatment Center, L.L.C., and Regional Urology Oncology
and Radiation Group, L.L.C.  As such, we have sustained the Regional Urology
entities’ sole issue in part and overruled it in part.  Having done so, we reverse
the trial court’s order denying the Regional Urology entities’ special
appearance with regard to Regional Urology Ambulatory Surgery Center, L.L.C.,
Regional Urology Property Group, L.L.C., Regional Urology Oncology and
Radiation Treatment Center, L.L.C., and Regional Urology Oncology and Radiation
Group, L.L.C. and remand the case with instructions that the
trial court dismiss the Price entities’ causes of action against these
entities for want of jurisdiction.   We affirm the
remainder of the trial court’s order denying the Regional Urology entities’
special appearance.

 

                                                                                                                                Brian Hoyle

                                                                                        
              Justice

 

 

Opinion
delivered February 26, 2010.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)









                [1]
The record is unclear concerning the exact length of time that the Marshall
office was open.  The Regional Urology entities claimed that Regional Urology,
L.L.C. maintained a Marshall office for some unidentified period of time until
December 2003 and again from July 2007 until March 2008.  The Price entities
claimed that Regional Urology, L.L.C. operated an office in Marshall
sporadically between 2002 and 2009.

   





                [2]
Patients with Texas zip codes accounted for 7.4% of the charges for the
Regional Urology entities.  These numbers were not further allocated among the
different Regional Urology entities.

 





                        [3] See
n.2.





                        [4] Because
we have concluded that the trial court had general jurisdiction over Regional
Urology, L.L.C., we need not include it in our analysis of whether the trial
court had specific jurisdiction over the remaining Regional Urology entities.  See
Tex. R. App. P. 47.1.